In the Matter of the Judicial Settlement of the Account of Proceedings of Louis Ungrich and Louis Kossuth Ungrich, as Executors, etc., of Jacob Schwarz, Deceased.

Louis Ungrich and Louis Kossuth Ungrich, as Executors and Trustees under the Will of Jacob Schwarz, Deceased, and J. Van Vechten Olcott, Special Guardian of Julia E. Schwarz and Other Infants, Appellants; Eliza Schwarz and Lizzie L. Ball, Respondents.

*Will — when the life beneficiary will be given the possession of the personal property without security being required — discretion of the surrogate.*

Where a will gives to the testator's widow "the rents, income and interest of all the remainder of my real and personal estate during her life, *with the custody and possession of all personal property of which I may die possessed,*" and upon her death gives one-half of his real and personal estate to his daughter absolutely and the other one-half to his executors in trust for his daughter-in-law and her children, the executors and trustees are not entitled to demand, as matter of right, that the widow be required to give security before receiving the personal estate; and the Appellate Division will not interfere with the discretion exercised by the surrogate in not requiring the widow to give such security, where it appears that she has no intention of disposing of the principal of the personalty and is entirely solvent.

Appeal by Louis Ungrich and Louis Kossuth Ungrich, as executors and trustees under the will of Jacob Schwarz, deceased, and by J. Van Vechten Olcott, special guardian of Julia E. Schwarz and other infants, from so much of a decree of the Surrogate's Court of New York county, entered in the office of said Surrogate's Court on the 26th day of June, 1899, as adjudges and decrees that Eliza Schwarz, the widow of the testator, is entitled to the custody and possession of the personal property of which the testator died possessed, and also from that clause thereof which provides: "And it is further ordered, adjudged and decreed that the said executors deliver to the said Eliza Schwarz the possession of the securities represented by the balance so found to be in the hands of the executors, amounting to the sum of ($25,842.72) Twenty-five thousand eight hundred and forty-two dollars and seventy-two cents."

This appeal was transferred from the first department to the second department.

*Edward W. S. Johnston,* for the executors, appellants.

*J. Van Vechten Olcott* [*Albert R. Lesinsky* with him on the brief], for the guardian, appellant.

*Ira D. Warren,* for the respondents.

HIRSCHBERG, J. :

The decree was made and entered upon the judicial accounting by the executors. The testator, by his will, gave to his daughter Lizzie L. Ungrich all the rents and income of certain houses on the northwest corner of East One Hundred and Twelfth street and Third avenue, in the borough of Manhattan, New York city, during the life of his wife Eliza Schwarz, and on her death the premises and buildings thereon to said daughter absolutely. He then made provision for his wife in these words: "I give to my wife Eliza Schwarz all the rents, income and interest of all the remainder of my real and personal estate during her life, *with the custody and possession of all personal property of which I may die possessed.*" Upon the death of the wife he gave one-half of his real and personal estate to his daughter Lizzie L. Ungrich, less one-half the value of the real estate already given to her, in order to secure equality in the division, and the other half to his executors and trustees in trust for his daughter-in-law Julia Schwarz during her husband's life, and at his death to be divided equally among their children. The appellants Louis Ungrich and Kossuth Ungrich are named as executors and trustees, with power of sale of the real estate not specifically devised, after the death of the wife.

On the accounting the widow claimed the right to the possession of the personal estate by virtue of the terms of the will. This claim was resisted by the executors on the ground, among others, that she had declared her intention to give away a portion of the estate. This she denied under oath, and after personally examining one of the executors upon the subject, the learned surrogate decided that " the decree may provide for the turning over to the life tenant of the property bequeathed to her without requiring her to give any bond." The appeal is taken from that portion of the decree made upon the accounting, which requires the executors to deliver to the widow the possession of the personal securities of the estate in accordance with such decision.

The sole question presented is whether the executors and trustees named in the will are entitled to demand from the widow, as matter of right, that she give security before receiving into her custody the personal estate in which she had but a life interest. With the discretion of the surrogate, so far as it has been lawfully exercised on the facts before him, we find no occasion to interfere. He has evidently found that the widow entertains no purpose of disposing of the principal of the personalty, and this conclusion is abundantly justified by the evidence. But if the executors and trustees are liable for the preservation of the property during the existence of the life estate, and for its ultimate delivery intact to the remaindermen, then it is their duty and their right to exact security. The rule which controls this question is declared in *Smith* v. *Van Ostrand* (64 N. Y. 278, 281). Judge RAPALLO said : " When a life estate is bequeathed in a sum of money, with remainder over, the legatee is entitled only to the income, and the principal, subject to the life estate, belongs to the remainderman, and, *unless otherwise directed by the will*, it is the duty of the executor either to invest the money and pay the interest to the first legatee during life, and preserve the principal for the remainderman, or, on paying it over to the legatee, to require security from him for the protection of the remainderman in respect to the principal. (*Tyson* v. *Blake*, 22 N. Y. 558.) But it is within *the power of the testator to dispense with these safeguards* and to confide the money to the legatee for life, trusting to such legatee to preserve the fund for the benefit of the remainderman, in which case the legatee for life becomes *trustee of the principal* during the continuance of the life estate."

To the like effect is the opinion in *Matter of McDougall* (141 N. Y. 21, 26), where Judge PECKHAM said : " In other cases where it has been held that the legatee was entitled unconditionally to the possession of the legacy without security, other facts existed, such as where the language of the will made it manifest that the testator intended to give to the legatee power to use in his discretion some portion of the *corpus* of his estate for his support, or a right to dispose of it during his life by gift or otherwise, or else it appeared that it was personal property of the nature of chattels which would require possession in order to enjoy the gift, and such possession was clearly contemplated by the testator, or the whole

scheme of the will or the terms of the particular legacy were such as to show that the testator intended to give a legacy of money for life only, and *yet clearly intended the life legatee to have possession thereof* and trusted to him not to waste, use or otherwise dispose of the *corpus.* The cases cited by the counsel for the respondent embody some such principle as is thus stated. (*Smith* v. *Van Ostrand,* 64 N. Y. 278; *Flanagan* v. *Flanagan,* 8 Abb. [N. C.] 413; *In re Settlement Wood's Estate,* 35 Hun, 60; *Thomas* v. *Walford,* 1 N. Y. Supp. 610; *Champion* v. *Williams,* 36 N. Y. St. Repr. 706; *In re Grant,* 16 N. Y. Supp. 716.)"

By the clear and unambiguous terms of the will the testator has made his wife the testamentary trustee of the principal of his personal estate for life. In addition to the income and interest he has given her also the " custody and possession" of the personal property. She is, therefore, entitled to such custody and possession as such trustee, and can no more be required to give security as a matter of course than the appellant executors could be required to give security as a condition precedent to the execution of the trust reposed in them. " Before making an order for such security," said the court in *Matter of Petition of Camp* (126 N. Y. 377, 385), "there must be some fact alleged and proved tending to show the property would be unsafe and insecure in the hands of the tenant for life. (1 Sto. Eq. Jur. § 604 and note; *Hudson* v. *Wadsworth,* 8 Conn. 348; *Langworthy* v. *Chadwick,* 13 id. 42; *Clarke* v. *Terry,* 34 id. 176.)" Undoubtedly this security may be required at any time when facts of improvidence, incompetency, insolvency or other condition may disclose a menace to the rights of the remaindermen; but no such condition was disclosed in the court below. The testator's estate amounts to between $300,000 and $400,000, and the widow receives all the income excepting what is devised to the daughter, and as there is no claim that she is indebted in any way, there can be no pretense of insolvency. On the question of her intention to dispose of the principal of the personal estate there was no proof against her on the oral examination of the executor. He testified that she had asked for certain money then on deposit, and stated that " she wanted to make some presents to some people, mentioning the names." This does not necessarily conflict with her sworn statement that she " may have stated that she intended to

give away the income derived from such property." Her denial of any intent to dispose of any portion of the principal intrusted to her by the will is positive and explicit, and under the circumstances fully justifies the conclusion reached by the surrogate.

The decree should be affirmed, with costs to all parties out of the estate.

All concurred.

Decree of the Surrogate's Court of New York county affirmed, with costs to all parties payable out of the fund.