(51 App. Div. 35.)

## In re ROFFO.

(Supreme Court, Appellate Division, Fourth Department.   April 10, 1900.)

1. LIFE ESTATE—REMAINDERS IN CHILDREN—PAYMENT OT LIFE TENANT—SE-
   CURITY FOR PRINCIPAL.
   Testator left his property to his wife for life, and on her death one-
   half to each of two daughters for life, with the use of the rents and
   profits, with remainder to the children of the daughters on their decease.
   On the death of the wife a married daughter, having seven minor children,
   demanded a transfer to her of one-half of the estate. *Held,* that the re-
   quirement of a bond, before the transfer, for the return of the principal,
   was proper.

2. SAME—POSSESSION BY EXECUTRIX—BOND.
   The other daughter was unmarried, and was named as executrix with
   the widow, and survived her mother.   In a settlement after the widow's
   death, the surrogate's court provided that one-half of the fund should be
   paid to the married daughter on her giving bond for the return of the
   principal, and that, if the surviving executrix desired to pay herself the
   one-half to which she was entitled during life, she should give a bond
   likewise.  *Held,* that the decree should have provided that the executrix
   give security in the event that she did not pay the one-half over to herself
   personally.

Appeal from surrogate's court, Erie county.

In the matter of the judicial settlement of the account of Millie
Roffo as surviving executrix of the last will and testament of John
B. Roffo, deceased.   From so much of a decree of the surrogate's
court requiring Julia Oishel to give bond before payment of money
to her, she appeals.   Affirmed, without prejudice to an application
to the surrogate's court requiring the executrix to give security.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and LAUGHLIN, JJ.

Charles Oishel, for appellant.
Charles M. Harrington, for respondent executrix.
Edward T. Durand, special guardian.

SPRING, J.   By the will of John B. Roffo, Mary Roffo, his widow,
upon his decease became entitled to the use of whatever property he
left.   The widow and an unmarried daughter were his executors.
He died in August, 1887, and his will was thereupon admitted to
probate, and letters testamentary were issued to these executors.
The property seems to have been managed by the widow, although
the securities and money were kept in the names of the executors.
No settlement was had during the lifetime of the widow.   After her
death, which occurred in January, 1899, a judicial settlement of the
account of the surviving executrix was had in the surrogate's court,
and the decree adjusting the same entered, and the appeal was
taken from a portion thereof.   Upon the death of the widow an
undivided one-half of his estate passed to Julia Oishel "for and dur-
ing the term of her natural life," with "the use and enjoyment, rents,
issues, and profits," thereof, and upon the decease of said daughter
the corpus of the property is to pass to her children then living.
A like bequest and devise were made to Millie Roffo, with a similar
disposition of the body of the estate upon her death.   In the event

of no children or descendants in the lineal line in one of the daughters, the property going for life to the one so bereft was to become vested in the children, if any, of the surviving daughter. Julia Oishel has seven minor children, and Millie Roffo at the time of the entry of the decree was unmarried. The personal estate remaining in the custody of the surviving executrix after the payment of expenses of administration and the commissions amounts to $30,-141.99. Julia Oishel demanded the transfer and payment to her of one-half of this amount, and the decree directs this to be done upon the execution of a bond, with two sureties, in the penalty of $15,200, to be approved by the surrogate. This was a very proper requirement, and the only criticism that can be given to the determination of the surrogate's court is its leniency, in permitting the penalty of the bond to be only in the sum of the property transferred, instead of double that sum, as is usual. Inasmuch as the question of the inadequacy of the penalty prescribed has not been raised, we do not feel called upon to interfere with the disposition made by that court. In the decision of matters of this kind, the interests of the ultimate beneficiaries are the controlling factors for the court to consider, and in this case, if this property is to be turned over to Julia Oishel to manage and control, certainly her children should be assured of its passing to them undiminished upon the termination of her life tenancy. It is not entirely clear that it was the intention of the testator to permit each of these daughters to have the possession of one-half of the personal estate upon the death of their mother. In any event, the transfer ought not to be made until adequate security has been given for the return of the principal. In re McDougall, 141 N. Y. 21, 35 N. E. 961; Livingston v. Murray, 68 N. Y. 485; In re Grant, 86 Hun, 617, 33 N. Y. Supp. 193.

The decree directs that, in the event of the surviving executrix paying over to herself the one-half to which she is entitled during life, she also give a bond with like penalty prescribed for her sister, Julia. This permits the executrix to retain the custody of this fund, and without security, as well as that of the one-half going to the sister, unless the latter elects to give the bond required. Millie Roffo is the only remaining executrix, and the personal property committed to her is quite large; and it would seem very judicious for the surrogate's court, upon a proper application, to require the executrix to give security for the retention of this property, or, if she declines to do so, to exact its payment and transfer into court. It may be well said that her circumstances "do not afford adequate security," in view of the long time which may elapse before the property reaches the real beneficiaries. The requirement of the bond is especially important, if the executrix has intermarried with an alien since the entry of the decree, as stated in the brief of the special guardian.

Decree of the surrogate's court affirmed, with costs of the respondents, including the special guardian, on this appeal, to be paid out of the estate, but without prejudice to an application to the surrogate's court requiring the executrix to give security as above indicated. All concur.