Owen McGivern, J.
In this proceeding under article 79 of the Civil Practice Act for the final settlement of the account of the trustee of an inter vivos trust, no objections to the account have been filed, but a serious question has arisen as to the distribution to be made of the corpus.
*109 The trust was created April 1,1913. The settlor was domiciled in Ncav Jersey. The trustee Avas a Ncav York trust company. The trust indenture was acknoAvledged by the settlor and the trustee in New York.
The trust indenture directed payment of the income to settlor’s wife for life, and upon her death, the principal is to be paid as she should designate and appoint by will. In default of such appointment, the principal is directed to be paid to the settlor if living, or, if he should predecease his Avife, to his next of kin determined in accordance with the Noav York law. The trust indenture contains other references to Noav York law; it contains no references to the laxvs of any other jurisdiction. New York laAV is referred to in connection with investments and in connection Avith the type of receipts the trustee may require.
The trust has been administered in New York from its inception. The settlor died domiciled in New Jersey in 1941. His wife died in 1959 also domiciled in Ncav Jersey. Her will, probated there, contains no reference to the power of appointment or to the instant trust.
Under New York laAV, the Avill of the donee of a poAver of appointment constitutes an exercise of such power unless a contrary intention appears in the will (Personal Property Law, § 18; Matter of Deane, 4 N Y 2d 326, 330). Under New Jersey law, on the other hand, “ a residuary clause, general in nature, Avill not ordinarily suffice to exercise a power of appointment ” (Bank of New York v. Black, 26 N. J. 276, 282), unless the contrary is shown to be “ the probable intent of the testatrix by a preponderance of the evidence ” (p. 286). Such evidence is not limited to the will, but includes all the surrounding circumstances (p. 289 et seq.).
The next of kin of the settlor urge that New Jersey law governs and that there is insufficient evidence of an intent on the part of settlor’s Avidow to have the will operate as an exercise of the power. The widow’s residuary legatees and executor contend that Ncav York law governs and that, even if New Jersey laAV applies, there is sufficient evidence from the surrounding circumstances to show that the Avidow intended to exercise the power.
It is well settled that the Iuav governing the exercise of a power of appointment is the same as the law governing the instrument creating the power. (Matter of New York Life Ins. & Trust Co., 209 N. Y. 585; Chase Nat. Bank v. Frazier, 243 App. Div. 623, affd. 269 N. Y. 541; Chase Nat. Bank v. Central Hanover Bank, 265 App. Div. 434, -441; City Bank Farmers Trust Co. v. Meyn, 263 App. Div. 671, 674; Central Hanover Bank & *110 Trust Co. v. Brown, 73 N. Y. S. 2d 282.) In the last-cited case, my learned colleague, Mr. Justice Hecht, said at page 284: “It is settled law that an instrument purporting to exercise a power of appointment must be read into the instrument creating the power and is governed by the law of the jurisdiction which controls the effect of the instrument creating the power. It clearly appears that New York had jurisdiction of matters affecting the indenture of trust and that the effect of the Will of Mrs. Brown, insofar as it involved an exercise of the power of appointment conferred by the trust indenture, is governed by the law of this state. ’ ’
This rule is but a corollary of the doctrine that, to quote Chief Judge Cardozo in Bishop v. Bishop (257 N. Y. 40, 51): “ The appointment under the power is to be read into the will by which the power was created and the validity of the gift determined as if the provisions thus incorporated had heen there from the beginning ’ ’.
Accordingly, the fact that the settlor’s widow died domiciled in New Jersey is of no importance in determining the law which governs the exercise of the power; that question must be determined by the law governing the trust itself.
The law governing an inter vivos trust of personal property, in the absence of an expressed intent, is the law of that State with which the various elements of the trust are most closely associated. (Land, Trusts in the Conflict of Laws, p. 99; 50 Col. L. Rev. 239, 240-241; see, also, Hutchinson v. Ross, 262 N. Y. 381, 394, 395; cf. Auten v. Auten, 308 N. Y. 155.)
In the instant case, the trust was executed here; the settlor, by selecting a New York corporation as trustee and by repeated references to New York law, obviously intended that the trust should be administered here; and it has in fact been administered here. The trust res must have been here when the trust was created, for the trust instrument contains an acknowledgment of receipt thereof. All these facts are indicative of an intention to have New York law govern the trust. In Hutchison v. Ross (supra) Judge Lehman, after a thorough review of the authorities, said, at page 395, that “ the validity of a trust of personal property must be determined by the law of this State, when the property is situated here and the parties intended that it should be administered here in accordance with the laws of this State.”
The facts that the trust indenture was executed in New York and that the trust was administered here were considered important in determining governing law by the Appellate Division, First Department, in Ross v. Ross (233 App. Div. 626, *111 636-637, 640), affd. sub nom. Hutchison v. Ross (262 N. Y. 381, supra).
As against all these factors pointing to New York, there is only one fact pointing to New Jersey, to wit, the domicile of the settlor and his wife, the income beneficiary. This is insufficient to overcome the New York contacts in determining governing law. (Hutchison v. Ross, supra; Chase Nat. Bank v. Frazier, 243 App. Div. 623, affd. 269 N. Y. 541, supra; Matter of Bankers Trust Co. [Waterbury], N. Y. L. J., June 25, 1962, p. 7, col. 7; see Matter of Pratt, 5 A D 2d 501, 505).
In National Shawmut Bank v. Cumming (325 Mass. 457, 463) it was stated: ‘ ‘ The general tendency of authorities elsewhere is away from the adoption of the law of the settlor’s domicile where the property, the domicil and place of business of the trustee, and the place of business intended by the settlor are in another State. Jackman v. Equitable Life Assurance Society, 145 Fed. (2d) 945, 947 (C. C. A. 3). Warner v. Florida Bank & Trust Co., 160 Fed. (2d) 766 (C. C. A. 5). Wilmington Trust Co. v. Wilmington Trust Co., 26 Del. Ch. 397, 405-406. Kitchen v. New York Trust Co., 292 Ky. 706, 710. Cutts v. Najdrowski, 123 N. J. Eq. 481. Hutchison v. Ross, 262 N. Y. 381. Shannon v. Irving Trust Co., 275 N. Y. 95. Restatement: Conflict of Laws §§ 294; 46, comment d; 49, comment b; Beale, Conflict of Laws, § 294.3.”
Perhaps the closest case to the instant one is Chase Nat. Bank v. Frazier (supra). The record on appeal in that case shows that it involved an inter vivos trust created by a nonresident of New York, and administered in New York by a New York fiduciary. A power of appointment was granted to another nonresident of this State. '* New York law was applied in determining that the power had been invalidly exercised by the will of the nonresident donee of the power.
In Matter of Deane (4 N Y 2d 326, 331, supra) it is said that when New York is the domicile of the settlor and the situs of the trust, New York law governs the exercise of a power of appointment. This and similar pronouncements do not assist in the solution of the problem where, as here, the domicile of the settlor is different from the situs of the trust.
The next of kin of the settlor rely heavily on Matter of Spitzmuller (279 App. Div. 233, affd. 304 N. Y. 608). In that case, a New York trust was created by a resident of Connecticut, who reserved to himself a testamentary power of appointment. Connecticut law, rather than New York law, was held to govern the question of whether the donor-donee intended to exercise the power by his will. In Matter of Deane (supra) this case was *112 held inapplicable to a situation where the donor and donee were not the same person. In the instant proceeding, the donee was not the settlor, and therefore, the Spitzmuller case is not in point.
It is concluded that New York law governs the trust and that, therefore, New York law governs the exercise of the power. No evidence being offered to rebut the presumption under section 18 of the New York Personal Property Law, the residuary clause of decedent’s will is held to be an exercise of the power of appointment, and the corpus of the instant trust, after deduction of all proper charges, is held payable to the residuary legatees.
Even if New Jersey law governed, the result would be the same. As pointed out above, New Jersey law permits evidence of the surrounding circumstances to be received to show that the donee of a power of appointment intended the residuary clause of the will to be an exercise of the power. The parties requested an opportunity to submit a stipulation of facts in order to avoid the expense of a trial or reference. Although there has been no stipulation of facts, statements of facts and documentary evidence have been submitted on notice. Facts and documents, the accuracy and authenticity of which are not challenged, will be deemed evidence of the surrounding circumstances.
The most significant fact is the size of the widow’s residuary estate. The gross estate, apart from the appointive fund, is $272,973.68 according to the New Jersey inheritance tax return. The residuary estate exclusive of the appointive- fund is estimated at $1,380.08 by the attorneys for the next of kin and $4,192.49 by the attorneys for the executor, but they point out that there is a deficiency assessment of Federal estate taxes which will wipe out this residue. There are four residuary legatees. It does not seem reasonable to assume that the widow intended them to receive less than $1,050 each in an estate of this size. It is more reasonable to assume that she intended them to share in the appointive fund as well. Similar considerations were held by the New Jersey Supreme Court in Bank of New York v. Black (26 N. J. 276, 293-294, supra) to require a finding that the testatrix intended her residuary clause to operate as an exercise of the power of appointment. Memorandum in the handwriting of the widow submitted by the attorneys for the residuary legatees, while not wholly unambiguous, tend to indicate that in planning her estate she considered the appointive fund.
The attorneys for the next of kin have submitted copies of earlier wills of the widow in which the power of appointment was specifically exercised. They argue that the omission from *113 her last will of all reference to the power indicates an intention not to exercise it. An examination of the prior wills shows that in each of them power of appointment was exercised in favor of the widow’s estate. The omission from the latest will of any provision concerning the power may be attributable to any one of at least three possible causes: (1) A change of intention as to the disposition to be made of the appointive fund. (2) An oversight on the part of the widow or her draftsman. (3) A belief on the part of either of them that the clause was unnecessary on the ground, as held herein, that section 18 of the New York Personal Property Law governs the exercise of the power.
It is sheer speculation to attempt to determine which was the true cause of the omission, but only the first would be of any significance for present purposes, and that seems the least likely. It would involve a drastic change in her testamentary plans, giving some $100,000, the corpus of the instant fund, to her late husband’s next of kin, none of whom was mentioned in any way in the prior wills. Such a drastic change would normally be evidenced by express language and should not be implied from the mere omission of a clause. Furthermore, an alteration of this magnitude in testamentary plans would probably be accompanied by a rapprochement between the widow and the new beneficiaries. The attorneys for the next of kin, who are in a position to know the facts, have offered no evidence of any such closeness between them and the widow or, in fact, of any social or other relationship. For these reasons, no weight can be given to the prior wills as evidence of an intention not to exercise the power.
Finally, the attorneys for the next of kin cite the fact that, in the Federal estate tax return, the executor stated that the instant power of appointment was not exercised by his decedent. This cannot be deemed an admission binding on the residuary legatees. Whether the power was exercised, under the circumstances, is essentially a question of law rather than that of fact, and cannot be determined on the basis of a legal claim made by the executor in the tax proceeding. (See Matter of City of New York [Maxwell], 15 A D 2d 153, 163-164.)
Accordingly, it is held (1) that New York law governs and under such law, the residuary clause of the will operates as an exercise of the power and (2) that even if New Jersey law governs, sufficient evidence of the probable intent of the widow to the same effect has been offered to rebut the contrary presumption under such law.
*114 One final question remains. The executor of the donee, in his answer, asks that the appointive fund be used to pay ‘ ‘ the appropriate part of the Federal * * * and New Jersey inheritance and estate taxes finally assessed against the estate [of the donee] * * * by reason of the inclusion of the said trust fund in said estate for * * * tax purpose ”. The four residuary legatees, in their answer, ask that they each receive one fourth of the appointive fund. No party has briefed the question of whether the appointive fund is liable for a portion of the estate taxes. If the residuary legatees wish to challenge this claim of the executor, they may submit a brief on that question within six weeks from the date of publication hereof in the New York Law Journal, to which2 brief he may reply within two weeks after service thereof on his counsel. In the absence of objection by the residuary legatees, the request of the executor will be granted. He will be paid from the appointive fund a sum equal to the “appropriate part” of the estate taxes, to be determined on settlement of the final order, and the net balance of the appointive fund will be paid in equal shares to the donee’s four residuary legatees.